**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

MELISSA A. HAGANS,                              :

                          Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                          Defendant.                    :

Case No. 3:10-cv-34

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

**REPORT AND RECOMMENDATIONS**

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff protectively filed an application for SSD on December 20, 2005, alleging disability from August 1, 2004, due to epilepsy/seizure disorder and acid reflux.  (Tr. 100; 115). Plaintiff's application was denied initially and on reconsideration. (Tr. 50; 54-58). Administrative Law Judge Lombardo held a hearing, (Tr. 20-42), and subsequently determined that prior to her date last insured,  Plaintiff was not disabled. (Tr. 7-19).  The Appeals Council denied Plaintiff's request for review, (Tr. 1-4), and Judge Lombardo's decision became the Commissioner's final decision.

In determining that Plaintiff was not disabled, Judge Lombardo found that Plaintiff last met the insured status requirement of the Act on September 30, 2005.  (Tr. 12, ¶ 1).  Judge Lombardo found that through her date last insured, Plaintiff had severe seizure disorder. *Id.,* ¶ 3. Judge Lombardo also found that prior to her date last insured, Plaintiff had the residual functional

capacity to perform a full range of work with the following limitations: unskilled, low stress work defined as jobs not involving assembly line production quotas; no balancing; no commercial driving; and no jobs involving exposure to hazards such as working at heights or around hazardous machinery. (Tr. 13, ¶ 5). Judge Lombardo then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that prior to her date last insured, there was a significant number of jobs in the economy that Plaintiff was capable of performing. (Tr. 17, ¶ 10). Judge Lombardo concluded that Plaintiff was not disabled prior to the expiration of her insured status. (Tr. 19).

The record reveals that Plaintiff has a long-standing history of a seizure disorder. The transcript contains the office notes of long-term treating neurologist Dr. Sullivan dated June 10, 1992, through January 9, 2008. (Tr. 270-340). On July 2, 2002, Dr. Sullivan reported that he had been treating Plaintiff for twenty years for partial complex secondary generalized epilepsy, that she had episodically continued to have frequent seizures, that in spite of multiple medication adjustments she continued to have several partial complex seizures almost every early morning, that in the past year she had a secondarily generalized seizure at least once a month, and that in the past six months she had one every two to four weeks. (Tr. 294-95). Dr. Sullivan also reported that Plaintiff's compliance had generally been very good in the past but that "this past winter compliance was quite questionable" not from a negligence standpoint but because she did not seem to understand instructions that had been given regarding medication changes, that her neurological exam had been persistently normal, that she had not been able to drive, was independent in her basic activities of daily living, but that she often had a postictal state of profound lethargy and confusion sometimes up to a couple of hours at a time. *Id.* Dr. Sullivan opined that due to the frequency of

her partial and intermittent significant generalized seizures, Plaintiff was unable to engage in gainful employment. *Id.*

Plaintiff was hospitalized November 8-9, 2005, following a seizure at home during which she hit her head. (Tr. 171-84). Plaintiff was treated with medications and released. *Id.*

Plaintiff was hospitalized November 15-16, 2005, after developing numerous partial seizures and secondary generalized seizures. (Tr. 185-201). Plaintiff was treated with medications and released. *Id.* During that hospitalization, an EEG revealed mild diffuse encephalopathy with diffuse slow wave activity and no definite epileptiform discharge. *Id.*

Plaintiff was hospitalized December 27-29, 2005, following several seizures at home. (Tr. 202-22). Plaintiff was treated with medications and discharged. *Id.*

Dr. Sullivan reported on May 31, 2006, that he had been seeing Plaintiff every three to six months since 1982, her diagnoses were partial complex secondary to generalized epilepsy, that she experienced loss of consciousness, and that the partial seizures occurred five to ten times a week and the generalized seizures occurred one to three times a month. (Tr. 276-79). Dr. Sullivan also reported that Plaintiff's seizures lasted one to two minutes, that the postictal manifestations included confusion, exhaustion, and irritability which lasted one to two hours, and that Plaintiff was compliant with her medications. *Id.* Dr. Sullivan noted that Plaintiff's seizures were likely to disrupt the work of co-workers, that Plaintiff would need more supervision at work than an unimpaired worker, that she could not work at heights, operate a motor vehicle, or take a bus alone, that she would need unscheduled breaks every one to two hours during the working day, and that she was capable of performing low stress jobs. *Id.* Dr. Sullivan also noted that Plaintiff would be absent about three days a month due to her seizures. *Id.*

Plaintiff consulted with Dr. Moore on October 11, 2006, who examined Plaintiff and reported that Plaintiff had catamenial seizures, that it was unclear whether they were partial or generalized or some combination, that she had failed all available anticonvulsants, that she might be a candidate for VNS [vagal nerve stimulator] or an investigational drug. (Tr. 253-54).

An October 24, 2006, EEG was abnormal due to the presence of bifrontal spikes or generalized activation and was consistent with either partial seizures or frontal onset or, less likely, a generalized form of epilepsy. (Tr. 252).

Plaintiff was hospitalized for twenty-three hours of observation on November 1, 2007, after experiencing frequent, increasing seizures. (Tr. 267-69). Plaintiff was treated with medication and discharged. *Id.*

Dr. Sullivan reported on September 11, 2007, that Plaintiff had experienced partial complex secondary generalized epilepsy since she was at least ten years of age, that numerous medications had been attempted, that she required a complicated medical regimen to avoid toxicity and to reasonably control her seizures. (Tr. 273-74). Dr. Sullivan also reported that the previous winter, Plaintiff underwent a vagus nerve stimulator implant following which she did seem to have some improvement, but that she continued to have serious episodic seizures, that she had partial seizures often on a daily basis especially early in the morning, and that after her seizures she had profound lethargy and confusion. *Id.* Dr. Sullivan noted that Plaintiff had been completely disabled from any form of gainful employment since at least August, 2004, and that although she had gone for months this past Spring without generalized seizures, she was recently hospitalized with profound generalized seizures once again. *Id.* Dr. Sullivan opined that given the duration of Plaintiff's epilepsy, her treatment, the unpredictable nature of her seizures, Plaintiff was permanently

6

and completely disabled. *Id.*

Consulting neurologist Dr. Chadha reported on January 22, 2008, that Plaintiff's VNS was negotiated and various parameters were evaluated, that because Plaintiff was still having seizures, her VNS output was increased, and that Plaintiff tolerated the increase without any significant discomfort. (Tr. 341).

Plaintiff continued to receive treatment from Dr. Sullivan and Dr. Chadha and she continued to experience breakthrough seizures. *See, e.g.,* Tr. 342-52.

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to find that she satisfied the Listings and by rejecting her treating neurologist's opinion. (Doc. 8). The question is, of course, whether Plaintiff has established that she became disabled between August 1, 2004, her alleged onset date, and September 30, 2005, her date last insured.

The Court will address Plaintiff's second Error first. In support of that Error, Plaintiff essentially argues that the Commissioner erred by rejecting the opinion of her long-term treating neurologist Dr. Sullivan.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

7

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

First, the Court notes that Dr. Sullivan has been Plaintiff's treating neurologist since 1982, when Plaintiff first developed the seizure disorder as a child. The longitudinal record of Plaintiff's treatment provided by Dr. Sullivan's clinical notes reveals that in spite of attempts to control Plaintiff's seizure with several medications over the years, Plaintiff has continued to experience seizures. In addition Plaintiff has consistently experienced a postictal state of profound lethargy and confusion. Dr. Sullivan's office notes dated August 14, 2004, through September 23, 2005, reflect Dr. Sullivan's continued treatment of Plaintiff as well as Plaintiff's continued seizure

9

activity. (Tr. 284-88).

In September, 2007, Dr. Sullivan opined that Plaintiff was disabled from any form of gainful employment. While it is true that Dr. Sullivan's September, 2007, opinion post-dates the expiration of Plaintiff's insured status, Dr. Sullivan specifically opined that Plaintiff has been disabled since at least August, 2004. In other words, Dr. Sullivan's opinion relates back to a time prior to the expiration of Plaintiff's insured status. Dr. Sullivan's clinical notes dated prior to the expiration of Plaintiff's insured status support his opinion.

The only evidence which arguably conflict with Dr. Sullivan's opinion are the opinions of the reviewing physicians. (Tr. 244-51; 256-64). Under these facts, the Commissioner erred by rejecting Dr. Sullivan's opinion that Plaintiff has been disabled since at least August, 2004. Therefore, the Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the factual issues have been resolved and that the

record adequately establishes Plaintiff's entitlement to benefits. Specifically, as noted above, Plaintiff's long-term treating neurologist Dr. Sullivan has opined that Plaintiff has been disabled since at least August, 2004, and his opinion is supported by his clinical notes particularly those notes dated between August, 2004, and September, 2005. The only evidence which arguably opposes Dr. Sullivan's opinion are the opinions of the non-treating, non-examining, reviewing physicians.

It is accordingly recommended that the Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act be reversed. It is further recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

October 4, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).